**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROCKHILL INSURANCE COMPANIES, | 3:17-cv-00496-HDM-WGC |
| Plaintiff, | |
| vs. | ORDER |
| CSAA INSURANCE EXCHANGE, et al., | |
| Defendants. | |

Pending before the court are cross-motions for summary judgment. On June 6, 2019, plaintiff Rockhill Insurance Companies ("Rockhill") filed a motion for summary judgment (ECF No. 88). Defendant CSAA Insurance Exchange ("CSAA") filed a response (ECF No. 105), which was joined by defendant Premier Restoration and Remodel, Inc. ("Premier") (ECF No. 109), and Rockhill replied (ECF No. 114).

On June 7, 2019, CSAA filed a motion for summary judgment (ECF No. 90), which was joined by Premier (ECF No. 108). Rockhill responded (ECF No. 104), and CSAA replied (ECF No. 113). The parties' motions are thus ripe for judgment.

Also pending before the court is Rockhill's motion to strike (ECF No. 99). CSAA responded (ECF No. 111), and Rockhill replied (ECF No. 112).

//

## I.   BACKGROUND

CSAA (defendant/counter claimant) is a homeowners' insurer. Premier (defendant/counter claimant) is a mold remediation contractor, which CSAA hired to perform water restoration and mold remediation services at the home of one of its insureds. Rockhill (plaintiff/counter defendant) is Premier's professional liability insurer for damages arising from the mold abatement activities.

In January 2013, CSAA's insureds, suffered water damage in their home due to a broken water pipe.  CSAA had the insureds contact Premier to do the necessary remediation work.  Premier performed mold mitigation and water damage repair, but overused an anti-fungal agent causing the residence to emit an offensive odor unacceptable to the homeowners.  The odor could not be eliminated to the satisfaction of the homeowners although it was arguably below detectable levels.  Therefore, CSAA demolished the home and constructed a new home at a cost of $3 million.

CSAA paid the costs of the repairs, and on June 23, 2015, filed a complaint for subrogation against Premier in the Superior Court of California.  Rockhill agreed to defend and indemnify Premier against the subrogation lawsuit.  After discovery Rockhill offered to settle for the $700,000, representing the limits of the policy reduced by defense costs, under the "Contractor's Pollution Liability Coverage" Provision of the policy.  CSAA refused the offer.

The subrogation lawsuit went to trial in November 2016, and on May 22, 2017, the Superior Court filed its Statement of Decision After Court Trial and Objections, in favor of CSAA and against Premier in the amount of $2,005,118.32, plus additional pre-

1    judgment interest of $529.45 per day from December 1, 2016 until

2    the date of entry of judgment, plus CSAA's attorney fees and court

3    costs.

4         On February 1, 2018, the state court entered judgment in favor

5    of CSAA in the amount of $2,230,465.53.

6         In the action before this court, Rockhill seeks declaratory

7    relief against CSAA and Premier as follows: First, in Count I, a

8    declaratory judgment that coverage is barred under the Commercial

9    General Liability Coverage Form due to the pollution exclusion.

10   Second, in Count II, a declaratory judgment that coverage is barred

11   under the Commercial General Liability Coverage Form due to the

12   mold, fungus, and organic pathogen exclusion.  Finally, in Count

13   III, a declaratory judgment that, in the alternative, the Rockhill

14   policy prohibits stacking of limits.

15        **II.  CHOICE OF LAW**

16        As a threshold matter, the court finds that Nevada law applies

17   to this case.  Nevada law does not recognize the doctrine of

18   concurrent causation.  *See Allstate Indem. Co. v. Russell*, 345 F.

19   App'x 264, 265 (9th Cir. 2009).

20        **III. CONTRACTOR'S POLLUTION LIABILITY COVERAGE**

21        It is undisputed by the parties that the "Contractor's

22   Pollution Liability Form" applies in this case.  The "Contractor's

23   Pollution Liability Form" states that Rockhill will pay for

24   Premier's legal liability for "property damage" caused by an

25   "occurrence" that results from a "pollution condition" that arises

26   out of "[Premier's] work."  The "Contractor's Pollution Liability

27   Coverage Form" also contains a "Mold Coverage Endorsement," which

28   amends the policy to provide coverage for "'property damage' that

1  results from a 'mold pollution condition' that arises out of

2  '[Premier's] work'."  On November 30, 2018, Rockhill paid to CSAA

3  the remaining limits under the "Contractor's Pollution Liability

4  Coverage Form."

5  **IV.   COMMERCIAL GENERAL LIABILITY COVERAGE**

6      The central contested coverage issue in this case is the

7  "Commercial General Liability Coverage Part."  The "Commercial

8  General Liability Coverage Part" specifically excludes coverage

9  for damage arising out of pollution or damage that would not have

10 occurred but for the threatened growth of mold.  The "Commercial

11 General Liability Coverage Part" includes a Mold, Fungus and

12 Organic Pathogen Exclusion, which states:

13      This insurance does not apply to:
        (1)  "Bodily injury" or "property damage" which would
14            not have occurred in whole or part but for the
              actual, alleged or threatened discharge,
15            dispersal, seepage, migration, release or escape
              of any "organic pathogen" at any time.
16

17 (ECF No. 14-1 at 15.) "Organic pathogen" means any organic irritant

18 or contaminant, including but not limited to mold, fungus, bacteria

19 or virus, including but not limited to their byproduct such as

20 mycotoxin, mildew, or biogenic aerosol. (*Id.*)

21      As the court previously found in connection with Rockhill's

22 motion for judgment on the pleadings:

23      It is the opinion of the court that it is undisputed in this

24 action that the underlying lawsuit arose solely from the effects

25 of chemical used to treat the threat of mold growth, which is

26 specifically excluded under the "Commercial General Liability

27 Coverage Part," and specifically covered under the "Contractor's

28 Pollution Liability Coverage Form."  The court now reaffirms its

finding and conclusion that there is no material issue in dispute that the damage to the home would not have occurred <u>in whole or in part, but for</u> the actual or threatened growth of mold.

Other courts have construed similar mold exclusion language to preclude coverage because the over-spraying would not have occurred <u>but for</u> the threatened growth of mold. *See Restoration Risk Retention Grp., Inc. v. Selective Way Ins. Co.*, No. A-1975-10T1, 2011 WL 4808211 (N.J. Super. Ct. App. Div. Oct. 12, 2011); *see also M&H Enterprises, Inc. v. Westchester Surplus Lines Ins. Co.*, 2010 WL 5387626 (D. Nev. Dec. 20, 2010); *Schmitt v. NIC Ins. Co.*, 2007 WL 3232445 (N.D. Cal. Nov. 1, 2007).

Therefore, the court concludes that Rockhill has no liability under the "Commercial General Liability Coverage Part" and only the "Contractor's Pollution Liability Coverage Form" applies and that Rockhill is entitled to summary judgment on Count II of its Amended Complaint.

Having so concluded, the court finds that Count I and Count III of Rockhill's Amended Complaint are rendered moot and the court declines to consider those counts.

**V.    BAD FAITH CLAIM**

In their counterclaims, CSAA and Premier assert violations of the covenant of good faith and unfair claims practices.

The undisputed facts in this case establish that the Rockhill did not act in bad faith in its handling of CSAA's claim. There was no dispute between the parties as to coverage under the "Contractor's Pollution Liability Coverage Form." As to the "Commercial General Liability Coverage Part," the court concludes as set forth above that there was a good faith dispute over whether

5

that coverage part applied. A reasonable, or good faith, dispute does not constitute a bad faith claim. *See Brewington v. State Farm Mut. Ins. Co.*, 96 F. Supp. 3d 1105, 1109 (D. Nev. 2015).

Additionally, the court concludes that Rockhill reasonably relied on counsel to evaluate liability and damages in the case and advise on settlement offers. *See State Farm Mut. Auto. Ins. Co. v. Super. Ct.*, 228 Cal.App.3d 721 (1991) (an insurer cannot be found liable for bad faith when it reasonably relies on the advice of counsel).

Because the Mold Exclusion applies to preclude coverage under the Commercial General Liability Coverage Form, CSAA never made a demand within the applicable limits. If there is no demand within limits, there can be no bad faith. *See Dorroh v. Deerbrook Ins. Co.*, 223 F. Supp. 3d 1081, 1091 (E.D. Cal. 2016), aff'd 751 F. App'x 980 (9th Cir. 2018).

Accordingly, the court concludes as a matter of law that the Rockhill did not act in bad faith in settling its claim with CSAA.

The court further finds and concludes that the remaining claims or defenses raised by the CSAA and Premier are without merit.

**VI. CONCLUSION**

Having considered all the evidence set forth on the record, and finding that there are no triable issues as to any material fact and the parties by virtue of their cross motions for summary judgment have acknowledged that this action should be decided on summary judgment, the court finds and concludes as follows. The court grants judgment in favor of Rockhill finding and concluding that the "Contractor's Pollution Liability Coverage Form" of the

policy applies to CSAA's claim, which the parties do not dispute, and the remaining limits of which have already been paid by Rockhill to CSAA. The court also finds and concludes that the <u>but for</u> Mold Exclusion applies to preclude coverage under the "Commercial General Liability Coverage Part." Because Rockhill has paid the applicable limits under its policy, and did not breach any contract it had with CSAA or any covenant of good faith and fair dealing, a judgment shall be entered in favor of Rockhill on its Amended Complaint and against CSAA and Premier on their Counterclaims.

Accordingly, Rockhill's motion for summary judgment on Rockhill's 's Amended Complaint (ECF No. 88) is GRANTED, and CSAA's motion for summary judgment on its counterclaims (ECF No. 90) is DENIED. Rockhill's motion to strike (ECF No. 99) is DENIED as moot.

The Clerk of the Court shall enter judgment in favor of the plaintiff, Rockhill, on Rockhill's Amended Complaint and against the defendants, CSAA and Premier, on their Counterclaims.

IT IS SO ORDERED.

DATED: This 9th day of August, 2019.

_Howard D McKibben_

UNITED STATES DISTRICT JUDGE