**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 20 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROCKHILL INSURANCE COMPANIES,<br><br>    Plaintiff-counter-claimant-<br>    Appellee,<br><br> v.<br><br>CSAA INSURANCE EXCHANGE, DBA<br>AAA Insurance Exchange,<br><br>    Defendant-counter-claimant-<br>    Appellant,<br><br> and<br><br>PREMIER RESTORATION AND<br>REMODEL, INC.,<br><br>    Defendant-counter-claimant. | No.   19-16716<br><br>D.C. No.<br>3:17-cv-00496-HDM-WGC<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted October 15, 2020
San Francisco, California

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  WARDLAW and COLLINS, Circuit Judges, and EATON,[**] Judge.
Concurrence by Judge COLLINS

Defendant-Appellant CSAA Insurance Exchange ("CSAA") is a homeowner's insurance company. Premier Restoration and Remodel, Inc. ("Premier") is a home-repair contractor in CSAA's network whose misapplication of an anti-mold chemical caused property damage to a residence insured by CSAA. Premier was insured by Plaintiff-Appellee Rockhill Insurance Companies ("Rockhill"), and CSAA believed that coverage for the damage was available under Rockhill's policy. After paying what it believed was the amount available under its policy, Rockhill filed an action against CSAA and Premier in the Nevada District Court, seeking a declaratory judgment that it had satisfied its obligations to Premier. Applying Nevada law, the District Court granted Rockhill's motion for summary judgment, finding (1) that Rockhill had paid the full available amount of its applicable Contractors Pollution Liability coverage ("Pollution Coverage"), and (2) that Rockhill's Commercial General Liability coverage ("General Coverage") did not apply because it contained a Mold, Fungus and Organic Pathogen Exclusion ("Mold Exclusion") barring the kind of property damage that Premier caused. The District Court also dismissed CSAA's counterclaim of bad faith.

---

[**]      Richard K. Eaton, Judge of the United States Court of International Trade, sitting by designation.

We have jurisdiction under 28 U.S.C. § 1291, and review grants of summary judgment *de novo*. *See Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017). Under this standard, we affirm.

As a threshold matter, "[a] federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65 (2013). A district court's choice-of-law analysis is reviewed *de novo*. *See Sarver v. Chartier*, 813 F.3d 891, 897 n.1 (9th Cir. 2016). We agree with the District Court that Nevada law applies according to Nevada's choice-of-law rules because Nevada, as Premier's primary place of business, bears the most significant relationship to both the contract and the alleged breach. *See, e.g.*, *Contreras v. Am. Fam. Mut. Ins. Co.*, 135 F. Supp. 3d 1208, 1218–19 (D. Nev. 2015).

The General Coverage provision in Rockhill's insurance policy precluded coverage of CSAA's claim. The provision is subject to the Mold Exclusion, which excludes any "property damage . . . which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, growth, release or escape of [mold] at any time." But for the actual, alleged, or threatened growth of mold in CSAA's insured's residence, the damaging application of the anti-mold chemical would not have occurred. Therefore, the General Coverage provision does not provide a means of recovery for the damage, and

Rockhill's obligation is limited to its Pollution Coverage provision, pursuant to which it has paid the full remaining amount of the policy limits.

CSAA argues that Rockhill did not provide adequate notice that it intended to reserve its right to deny coverage under the Mold Exclusion of the General Coverage provision and thus waived that right. We reject this contention. Under Nevada law, "an insurer does not waive its right to assert an exclusion where it has provided its insured with adequate notice of an unambiguous exclusion," *Vitale v. Jefferson Ins. Co.*, 5 P.3d 1054, 1059 (Nev. 2000), and here there is no reasonable basis in the record for finding Rockhill's notice was prejudicially inadequate, because Premier conceded that it received Rockhill's reservation of rights letter.

We further agree with the District Court's grant of summary judgment to Rockhill on the bad-faith claims. "Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Guaranty Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). Here, Rockhill followed the advice of its legal counsel in making multiple settlement offers, and CSAA failed ever to make a settlement demand within the coverage limits. Viewing the record as a whole, we conclude that no reasonable trier of fact could find that Rockhill acted unreasonably or in bad faith.

**AFFIRMED.**

*Rockhill Ins. Cos. v. CSAA Ins. Exchange*, No. 19-16716

COLLINS, Circuit Judge, concurring:

FILED

NOV 20 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I concur in the majority opinion.  I write separately only to explain in

somewhat more detail why I agree that, under *Vitale v. Jefferson Ins. Co.*, 5 P.3d

1054, 1059 (Nev. 2000), Rockhill Insurance Companies ("Rockhill") did not waive

its right to assert the Mold Exclusion.

Rockhill's August 14, 2015 reservation-of-rights letter to its insured,

Premier Restoration and Remodel, Inc. ("Premier")—its third such letter—

specifically invoked the separate "Total Pollution Exclusion" in the Commercial

General Lability Policy, rather than the Mold Exclusion.  But under *Vitale*, there is

no waiver of that additional exclusion absent a showing of prejudice from the

letter's failure to specifically mention it, and here there is no such showing.  *See*

5 P.3d at 1058–59 (citing *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d

1551, 1561 (9th Cir. 1991)).

Although the particular copy of this letter that was sent to Premier was

apparently returned to Rockhill undelivered, in my view no reasonable trier of fact

could find that Premier did not receive the letter in a timely manner.  Premier's

principal, Timothy Jeter, testified that he discussed with his Rockhill-assigned

defense counsel (who was cc'ed on the August 14 letter) any letters that came from

Rockhill.  When asked at his deposition if he "recall[ed] seeing this [particular]

letter on or about the date it was sent," Jeter testified, "Yes.  It does look familiar."
Further, when asked whether he "received the three reservation of rights letters
from Rockhill," he stated, "I acknowledge I got those letters."  The fact that, one
month later, Jeter submitted a declaration in opposition to summary judgment that
arguably contradicts these concessions does not give rise to a triable issue of fact.
*Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998) ("A
party cannot create a triable issue of fact, and thus survive summary judgment,
merely by contradicting his or her own sworn deposition testimony with a later
declaration."); *see also Doe v. Cutter Biological, Inc.*, 971 F.2d 375, 376 (9th Cir.
1992) ("[A] party cannot create its own issue of fact by having a witness contradict
himself between affidavit and deposition testimony.").

    With those observations, I concur in the court's memorandum.